NANCY J. RYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF B. A. RYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1705, 1706.    Promulgated January 31, 1927.

*C. R. McAtee, Esq.,* for the petitioners.
*J. L. Deveney, Esq.,* for the respondent.

SMITH: These are proceedings for the redetermination of deficiencies in income tax of $444.05 for the year 1919 in the case of Nancy J. Ryman, and of $257.90 and $444.05 for the years 1918 and 1919, respectively, in the case of the estate of B. A. Ryman. The proceedings were consolidated for the purpose of hearing and decision. The point in issue is whether a partnership existed between B. A. Ryman and his sons, J. Nye Ryman and G. Carroll Ryman during the years 1918 and 1919.

FINDINGS OF FACT.

1. B. A. Ryman died in the spring of 1921. His widow is Nancy J. Ryman. Their two sons were of legal age in 1918 and 1919. For these years separate individual returns for income-tax purposes were filed by husband and wife under the community property law of Texas, and the sons filed separate individual returns. Partnership returns were filed for both years for the business of the father and sons.

2. In January, 1907, the eldest son, J. Nye Ryman, was called home from college to look after the ranch and business interests of his father by reason of the father's ill health. He became active in their, management, married, and continued in the business. The father and son entered into an agreement to the effect that the eldest son would share equally with his two younger brothers in a one-half interest in the business. At the time, the two younger sons were under twenty-one years of age. The older of the two attained his majority in March, 1912. The youngest son, Bowie, died in 1911 as the result of an accident. Upon the death of the youngest, the one-half interest in the business theretofore shared equally between the three sons was divided equally between the two sons.

The oldest brother contributed to the partnership 30 to 50 head of cattle of his own at the time he returned from college, and the three brothers together contributed about 150 head of cattle and a cattle brand. The father also contributed considerable personal property. He owned no real estate at the time. The cattle owned were grazed upon leased lands, and later upon lands which were acquired with partnership profits. Neither the brothers nor the father received from the business a salary or profits and each drew only living expenses. The bank account was carried in the names of the father and the eldest son. Checks were honored when drawn by either of them or by the younger son in the name of the father. No books of account were kept of the business, the only record of transactions being checks on the bank account.

3. In 1918 the eldest son managed the Bay City Cattle & Pasture Co., in which the family partnership owned a one-sixth interest, and for his services received a salary of $1,700, which he paid over to the family partnership and which the partnership reported as a part of its income for that year. About 1910, B. A. Ryman bought 125 shares of stock of the First State Bank of Bay City, Texas, which was paid for out of partnership proceeds and with some moneys received from the mother from sale of lands belonging to her estate. More bank stock was acquired and in 1920 each of the two brothers owned 173 shares and the father owned 258 shares. In 1919 the elder son spent some time in the bank without salary, learning something of its operation, and afterwards, in 1920, drew a salary for his services. In 1919 real estate in Bay City, Tex., was purchased with notes signed by the father and son, and title was taken in the name of the son, who, a few months later, sold the property at a profit. This lot was purchased with partnership funds and the profit reported in the 1919 partnership return. In 1918 the younger son made a contract and bond in his own name to do some grading for the Gulf, Colorado & Santa Fe Railroad, using for this purpose teams and tools belonging to the partnership, and the profit received by him from the contracts was reported as profit of the partnership for the year 1918.

4. The partnership agreement was never reduced to writing. The father frequently stated to business associates that he and his sons were jointly interested in the cattle business and the bank accounts were understood by the bankers to be partnership accounts.

5. An ordinary common-law partnership existed between B. A. Ryman and his two sons during the years 1918 and 1919.

*Judgment will be entered on 15 days' notice, under Rule 50.*